IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 14-00707 SOM |
| | ) | CIV. NO. 21-00399 SOM-RT |
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANT |
| vs. | ) | DOUGLAS FARRAR, SR.'S MOTION |
| | ) | UNDER 28 U.S.C. § 2255, |
| DOUGLAS FARRAR, SR., | ) | DENYING DEFENDANT'S MOTION |
| | ) | FOR AN EVIDENTIARY HEARING, |
| Defendant. | ) | AND DECLINING TO ISSUE A |
| _____ | ) | CERTIFICATE OF APPEALABILITY |

**ORDER DENYING DEFENDANT DOUGLAS FARRAR, SR.'S MOTION UNDER 28 U.S.C. § 2255, DENYING DEFENDANT'S MOTION FOR AN EVIDENTIARY HEARING, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

## I.        INTRODUCTION.

In 2018, a jury found Defendant Douglas Farrar, Sr., guilty of several counts involving the distribution of large quantities of cocaine and methamphetamine.  This court sentenced him to 324 months in prison.  Farrar now brings a § 2255 motion challenging that sentence.  According to Farrar, Gary Singh, his attorney during sentencing, was ineffective because he failed to object when this court imposed a 2-level obstruction of justice enhancement in calculating Farrar's sentencing guideline range. This court disagrees.  The enhancement was based on wilfully false statements Farrar made at an evidentiary hearing on his motion to suppress.  Singh had no basis for objecting, and attorneys do not have a duty to make frivolous objections.  For the same reason, Farrar was not prejudiced by Singh's failure to

object.  Farrar has not met his burden of establishing
ineffective assistance of counsel.  His § 2255 motion is denied.

II.        **BACKGROUND.**

On July 31, 2014, a grand jury returned a sealed
indictment against Farrar.  ECF No. 15.[1]  The indictment charged
Farrar with a number of federal drug trafficking offenses.  *Id.*
Superseding indictments filed on July 29, 2015, and January 18,
2016, likewise charged Farrar with several drug offenses.  ECF
Nos. 54, 81.

On December 23, 2016, Farrar filed a motion to suppress
certain statements that he had made during a preindictment
interview with federal agents.  ECF No. 75.  His primary argument
was that "federal law enforcement agents failed to tell him about
his *Miranda* rights before questioning him while he was in
custody."  *United States v. Farrar* (*Farrar I*), 2017 WL 741560, at
*1 (D. Haw. Feb. 24, 2017).  This court found Farrar unbelievable
and denied the motion.  *Id.*  In a written order, this court made
extensive findings relevant to the present § 2255 petition:

> L.  The agents and Farrar have vastly
> different descriptions of the interview.  *The
> court does not attribute these differences to
> . . . innocent confusion . . . .*
>
> . . .

---

[1] All ECF and PageID references are to Crim No. 14-707,
rather than to the companion civil case.

2

N.  According to Agent Nerlin, Farrar said that he understood his rights and was waiving them, and Agent Nerlin then wrote in the time and date in the waiver section before Farrar signed in his presence.  Agents Nerlin and Chu testified that they then also signed and dated the Statement of Rights form as witnesses.

O.  Agent Nerlin took the lead in asking questions during the interview, which was conducted in English and, Agent Nerlin says, lasted about two and a half hours.  There were three breaks offered to Farrar to allow him to get water or food and to use the restroom.  Farrar turned down offers for water or food but used the restroom a couple of times.  Agents Chu and Yoshinaga asked occasional questions of Farrar.  All three agents viewed Farrar as appearing to understand what was happening and as acting cooperatively and voluntarily.  Agent Nerlin did not see anything suggesting that Farrar was under the influence of alcohol or drugs, physically ill, or fatigued.  Agent Nerlin testified that Farrar did not refer to any medical condition or physical problem and did not tell the agents that he was on medication at that time.  Agents Nerlin, Chu, and Yoshinaga testified that Farrar's answers were responsive to the questions asked.

P.  According to the agents, Agent Nerlin typed up a report summarizing Farrar's interview statements. . .

Q.  While Agent Nerlin was preparing the written statement, Farrar was fingerprinted and processed.  Agent Nerlin says he then gave the typed statement to Farrar, who silently read it over for a few minutes, agreed that the written statement was accurate, and signed and dated it.  Agent Chu's recollection matched Agent Nerlin's in this regard.  Agent Nerlin and Agent Chu signed and dated the written statement as witnesses between 10:00 and 10:30 p.m.

3

R.  Farrar's description of the interview differs from the agents' description in numerous important respects.  To begin with, Farrar says he was not read his *Miranda* rights before questioning began.  He says his rights were read to him at the end of the interview, after hours of questioning. Although his signature appears on the waiver of rights form, he says that no preprinted form was presented to him at any time and that what he signed were three entirely blank sheets of paper.  He recalls having done his best to be courteous, respectful, and compliant, and to have signed blank sheets of paper in that spirit.  His understanding was that one signature was for his phone, one for some fireworks that the agents seized, and one for his statement, but he says that in all three instances there no words on the pages when he signed.  This court saw Farrar's signature on only two forms—the waiver of rights form and the statement. Farrar appeared to be claiming that words were typed in above his signature after the fact.

S.  Asked about the placement of his signature at the bottom of the waiver of rights form and the statement, Farrar said he was "pretty sure" that he himself decided where to place his signature on each page. Notably, his signature on the waiver of rights form is not in the same place as his signature on the statement, although both are on the bottom half of the pages on which they appear.  This court found it highly implausible that someone asked to sign blank pages of paper would consistently sign near the bottom of each page, once toward the left margin and another time toward the right margin.  If he signed blank sheets of paper, did Farrar expect words to be inserted above his signature?  This court also found it implausible that agents would type in the waiver of rights language when Farrar was not interviewed in the field and every law enforcement agency has preprinted forms in its office.  Even if, as Farrar contends, he

4

was not read his rights until after the
interview, it makes no sense that agents
would have unnecessarily bothered to type in
the waiver language instead of using the
preprinted form.  *In short, this court found
Farrar's account of signing blank sheets of
paper so unbelievable that the court found it
hard to credit any part of his testimony*.
This court expressly finds here that Miranda
rights were given and voluntarily waived
before questioning began.

T.  Farrar also testified that he had taken
medication for back pain and anxiety before
meeting agents at his house, suggesting that
the medication impaired his thinking.  *The
possibility that he was not thinking clearly,
however, is undercut by what he testified
were his repeated invocations of his Fifth
Amendment right against self-incrimination.*
He said that, over the course of hours of
questioning, he told the agents that he had
"nothing to say" and was pleading the Fifth
and remaining silent.  He testified that he
had prior experience with law enforcement and
that previously all questioning had stopped
when he said those things.  He said that this
time, by contrast, the questioning continued.
He recalled that Agent Yoshinaga flipped over
a cell phone to show Farrar a screen with
"32" on it.  According to the typewritten
statement, 32 was the number of pounds of
crystal methamphetamine that Farrar had
directed Stephen Shigemoto to send from Los
Angeles to Honolulu.  Farrar testified that,
upon seeing "32," he "broke down," having
been worn out by the lengthy questioning that
he said continued notwithstanding his
repeated statements that he was refusing to
talk.

U.  The agents were questioned during the
suppression hearing about whether Farrar had
invoked his Fifth Amendment rights. Agent
Yoshinaga, who was not present for the entire
interview, had nothing to say on that
subject, but Agents Nerlin and Chu testified
that Farrar had declined to answer questions

5

> on a single topic. Agent Nerlin testified
> that Farrar had clearly stated that he would
> answer questions that addressed matters other
> than that one topic.  Agent Nerlin and Agent
> Chu each had handwritten interview notes that
> included a reference to Farrar's invocation
> of the Fifth Amendment, although those
> references described the topic in issue
> differently.  Notably, those references
> appear part way into the notes, not at the
> start.  The very existence of those
> references lends credence to the agents'
> recollections; had they been deliberately
> ignoring Farrar's alleged blanket refusals to
> talk, they would hardly have included such
> references in their notes.  *In short, once
> again, this court finds Farrar's account
> unbelievable.  The court's credibility
> finding relies heavily on the documentary
> evidence*.

*Id.* at *2-5 (emphases added).

A jury ultimately found Farrar guilty on four different counts.  ECF No. 154.  During sentencing, this court again considered Farrar's suppression hearing testimony.  In the presentence report, the probation officer summarized the suppression proceeding, then, in a sentencing recommendation, recommended the court find that, because Farrar had lied during the suppression hearing, he had obstructed justice:

> 32.  On 01/19/2017, the defendant testified
> during his Motion to Suppress hearing before
> U.S. District Judge Susan Oki Mollway.  The
> defendant testified that he was not read his
> *Miranda* rights; the waiver of rights form and
> written statement, each bearing his signature
> and included in discovery materials, were
> fraudulent and had been blank when he had
> signed them; the medication he was taking
> impaired his thinking; and investigators

ignored his invocation of his Fifth Amendment rights.

33.   The Court found the testimony of the defendant not credible.  The Court stated that the defendant was clearly in custody during his interview, that investigators properly administered his *Miranda* rights, and the defendant waived those rights, voluntarily and knowingly.  The defendant provided no information to investigators before or during his interview about being impaired by any physical or psychological condition or medication and gave no sign of impairment.  The Court found the defendant's assertion that investigators failed to respect his right to remain silent unbelievable.  The investigation revealed that the defendant invoked his right to remain silent on certain topics, but agreed to answer questions on others.  The Court found that investigators did not pursue questioning regarding the topics that the defendant declined to answer. As a result, the defendant's Motion was denied.

. . . .

**Adjustment for Obstruction of Justice:** The Court determined that the defendant's testimony during his Motion to Suppress Evidence hearing was not credible.  Since the defendant provided materially false information which, if believed by the Court, would have influenced or affected the issue under determination, his conduct is viewed as a willful attempt to obstruct or impede the administration of justice during the prosecution of the instant offense. Therefore, a 2-level enhancement is warranted, pursuant to USSG § 3C1.1, Application Note 4(b).

ECF No. 166.

The probation officer's recommendation noted that, with the enhancement for obstruction of justice, the guideline

imprisonment range was 360 months to life.  *Id.* at 1063.  Because
of Farrar's medical issues, however, the recommendation was for a
a below-guidelines sentence of 240 months of imprisonment (the
mandatory minimum sentence).  *Id.* at 1072-73.

Farrar did not object to the presentence report.  ECF
No. 167.  Farrar's attorney during sentencing, Gary Singh,
discussed the obstruction of justice enhancement with him and
advised him that in his "professional opinion, he would not
prevail if he objected."  ECF No. 256-1, PageID # 3113.
According to Singh, based on his experience, he thought that
there was a good chance that the court would adopt the probation
officer's recommendation of 240 months.  *Id.*  He therefore
"believed it was best to make the tactical decision not to lodge
any objections to the PSR and agree with the 240-month sentence
recommended in the PSR in the hope that the court would adopt
that sentence."  *Id.*  Based on these considerations, Singh did
not object to the probation officer's recommendation that the 2-
level obstruction of justice enhancement applied to Farrar.  *Id.*

At the sentencing hearing, this court "adopted the
presentence report," which served as its "set of findings for
purposes of sentencing."  *Id.* at 3020.  Although Singh asked the
court to follow the 240-month recommendation in the presentence
report, this court noted that because of the obstruction of
justice aspect of the case, a longer sentence was appropriate.

Still, in light of Farrar's health concerns, this court imposed a below-guidelines sentence of 324 months in prison.  *Id.* at 3044.

Farrar appealed his sentence.  *See* ECF No. 176.  His primary argument on appeal was that this court procedurally erred by imposing the 2-level enhancement for obstruction of justice without expressly making an independent finding that Farrar had wilfully obstructed justice.  *United States v. Farrar*, Case No. 18-10451, Dkt. No. 18 at 31-36 (9th Cir.) (citing *United States v. Dunnigan*, 507 U.S. 87, 95 (1993)).  According to Farrar, this court's adoption of the presentence report was insufficient to constitute such a finding.  *Id.*  Farrar also asserted that his sentence was substantively unreasonable.  *Id.* at 37-43.

The Ninth Circuit rejected both arguments.  It held that (1) this court "made express findings concerning falsity and willfulness during the sentencing hearing and expressly adopted as its factual findings the presentence report, which addressed all of the required elements," and (2) the below-guidelines sentence imposed by this court was reasonable.  *United States v. Farrar* (*Farrar II*), 788 F. App'x 483, 483-84 (9th Cir. 2019).  Farrar filed a petition for a writ of certiorari, which the Supreme Court denied on October 5, 2020.  ECF No. 244.

On September 29, 2021, Farrar timely filed the present motion under § 2255.  See ECF No. 247.

9

III.        **LEGAL STANDARD.**

A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255.  There are some general rules regarding what kinds of claims can and cannot be raised in a § 2255 petition.

A § 2255 petitioner may not invoke § 2255 "to relitigate questions which were or should have been raised on a direct appeal from the judgment of conviction."  *United States v. Marchese*, 341 F.2d 782, 789 (9th Cir. 1965).  For example, a § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal.  As the Ninth Circuit stated in *Olney v. United States*, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."

Similarly, a § 2255 petitioner is procedurally barred from raising an issue in a § 2255 petition if the issue could have been raised earlier, unless the § 2255 petitioner is actually innocent, *United States v. Guess*, 203 F.3d 1143, 1145 (9th Cir. 2000), or he or she can demonstrate both "cause" for

10

the delay and "prejudice" resulting from the alleged error.
*United States v. Frady*, 456 U.S. 152, 167-68 (1982).  As the
Supreme Court stated in *Frady*, "[T]o obtain collateral relief
based on trial errors to which no contemporaneous objection was
made, a convicted defendant must show both (1) 'cause' excusing
his double procedural default, and (2) 'actual prejudice'
resulting from the errors of which he complains."  *Id.*; *accord*
*Davis v. United States*, 411 U.S. 233, 242 (1973).  To show
"actual prejudice," a § 2255 petitioner "must shoulder the burden
of showing, not merely that the errors at his trial created a
*possibility* of prejudice, but that they worked to his *actual* and
substantial disadvantage, infecting his entire trial with error
of constitutional dimensions."  *Frady*, 456 U.S. at 170 (emphasis
in original).  Of course, ineffective assistance of counsel
claims may be brought in a § 2255 proceeding, even if not
asserted in a defendant's direct appeal.  *See Massaro v. United*
*States*, 538 U.S. 500, 504-05 (2003).

**IV.      ANALYSIS.**

**A.    Farrar's Arguments.**

Farrar's briefing makes it difficult to discern exactly
why he believes his sentence should be set aside.  Both his
§ 2255 motion and his reply brief spend considerable time
revisiting his first claim on appeal.  His § 2255 motion
essentially repeats his contention that this court erred by

11

adopting the presentence report's findings, rather than making its own independent findings on the obstruction of justice issue. ECF No. 247, PageID # 2826-2829.  His reply brief goes even further and argues that the Ninth Circuit's decision affirming this court's adoption of the presentence report "should not be followed because the decision is clearly erroneous and its enforcement would work a manifest injustice."  ECF No. 259, PageID # 3124.

It is axiomatic that these arguments, standing alone, cannot serve as the basis for relief under § 2255.  It is not this court's role to review decisions of the Ninth Circuit. Moreover, arguments that have failed on appeal cannot be revived in a § 2255 petition.  Having raised that point unsuccessfully on direct appeal, Farrar cannot now seek to relitigate it in a § 2255 petition.  *Olney*, 433 F.2d at 162.

Of course, Farrar is entitled to bring an ineffective assistance of counsel claim.  Farrar discusses such a claim, but, because his brief focuses on repeating his appellate arguments, it is difficult to understand exactly what he is asserting. Farrar does contend that Singh, his counsel during sentencing, should have "objected to the obstruction of justice guideline," but he does not identify the precise objection he believes Singh should have made.  ECF No. 247, PageID # 2829.  Farrar could be saying that Singh should have objected to this court's purported

12

procedural error in not making express findings on the
obstruction of justice issue (which would explain his repetition
of his arguments on appeal).  Alternatively, Farrar could be
contending that Singh should have made the substantive assertion
that Farrar actually did not obstruct justice, and therefore the
2-level sentencing enhancement did not apply.  Farrar frequently
conflates the two arguments.

In the end, it does not matter which argument Farrar
relies on.  To establish ineffective assistance of counsel, a
defendant has two separate burdens of proof.  First, the
defendant must show that defense counsel's performance was
deficient.  Second, the defendant must show that the deficient
performance prejudiced his defense.  *Strickland v. Washington*,
466 U.S. 668, 687 (1984); *Turk v. White*, 116 F.3d 1264, 1265 (9th
Cir. 1997) (stating that a defendant has two separate burdens of
proof in an ineffective assistance of counsel claim: first, that
counsel's performance was deficient; second, that the deficient
performance prejudiced the defense); *Malivao v. United States*,
2018 WL 6834704, at *4 (D. Haw. Dec. 28, 2018) (stating that the
defendant "bears the burden of proof as to both prongs of the
*Strickland* analysis").  Because "[i]t is all too tempting for a
defendant to second-guess counsel's assistance after conviction,"
judicial scrutiny of counsel's performance is highly deferential.
*Strickland*, 466 U.S. at 689.  There is "a strong presumption"

that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms."  *Id.* at 688.  Even if a petitioner can overcome the presumption of effectiveness, the petitioner must still demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Irrespective of how Farrar's arguments are interpreted, he cannot satisfy either burden.

> **B.  Farrar has not Met his Burden of Establishing Ineffective Assistance of Counsel.**
>
> **1.  Farrar has not Demonstrated that Singh was Ineffective in Failing to Raise a Procedural Objection to this Court's Adoption of the Presentence Report.**

First, Farrar could be arguing that Singh was ineffective because he did not object to this court's purported error in not making express and independent findings on the obstruction of justice issue.  *See* ECF No. 247, PageID # 2826 (arguing that this court "failed to make express and independent findings on the obstruction of justice enhancement" and that the "generic adoption of the PSR was insufficient").  In short, Farrar could be saying that this court procedurally erred, and Singh should have objected on that basis.  *See* ECF No. 259, PageID # 3125.

14

That argument could not succeed under either prong of *Strickland*.  First, counsel has no duty to make meritless objections.  *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).  Although the Ninth Circuit reviewed this court's findings for plain error, its reasoning made it clear that this court did not err.  The Ninth Circuit held that this court *did* make "express findings concerning falsity and wilfulness during the sentencing hearing and expressly adopted as its findings the presentence report, *which addressed all of the required elements*."  *Farrar II*, 788 F. App'x at 484 (emphasis added).  Thus, the Ninth Circuit has already held that Singh had no basis for making an objection.  That ruling is law of the case, and this court will not revisit it.

Second, even if Singh should have made a procedural objection, Farrar cannot establish prejudice.  A defendant obviously cannot be prejudiced by the failure to make a meritless objection.  Moreover, if Singh had argued at the sentencing hearing that this court needed to independently make an express finding that Farrar obstructed justice, this court, out of an abundance of caution, would have done so.  That would have negated any claim of procedural error.[2]  Thus, even if Singh had

---

[2]  To the extent that Farrar is arguing that a procedural objection would have caused this court to change the substance of its ruling and conclude that Farrar did *not* obstruct justice, he is really making a substantive argument.  The question would then become whether this court could have reasonably found that Farrar

15

objected, the outcome would have been the same: this court would have concluded that Farrar obstructed justice and imposed the 2-level enhancement.  Farrar cannot establish prejudice under *Strickland*.

>    **2.   Farrar has not Demonstrated that Singh was Ineffective in Failing to Raise a Substantive Objection to the Imposition of the Obstruction of Justice Enhancement.**

Farrar also could be saying that Singh should have raised a substantive objection to the imposition of the 2-level obstruction of justice enhancement.  In his reply brief, Farrar asserts that "there was no evidence that [his] inaccurate testimony at the suppression hearing was willful."  ECF No. 259, PageID # 3218.  Thus, Farrar could be contending that if Singh had objected, this court would not have found that he had obstructed justice.  *See id.*

That argument also fails.  To reiterate, attorneys do not have to make frivolous objections to provide effective representation.  *Lowry*, 21 F.3d at 346.  As the Ninth Circuit has explained:

>    A lawyer's zeal on behalf of his client does not require him to file a motion which he knows to be meritless on the facts and the law.  Also, the premise that the defendant has nothing to lose by such a motion is false.  The defendant stands to lose two things of value—a significant quantity of his

---

did not obstruct justice.  That issue is addressed in greater detail below.

> lawyer's scarce time, and some of his
> lawyer's credibility with the judge.  Lawyers
> are not called "counsel" for nothing.  The
> judge is counseled by the lawyers as to how
> he should proceed.  The attentiveness with
> which the judge listens to the lawyers'
> advice is tempered by his judgment about the
> credibility of the particular lawyer.  An
> unmeritorious motion [or objection] may cost
> the particular defendant some deference by
> the judge to his lawyer's advice on other
> issues later in the case.

*Id.*[3]

It would have been pointless for Singh to object to the obstruction of justice enhancement.  At the hearing on this matter, Farrar contended that this court has never held that Farrar wilfully obstructed justice.  That assertion is incorrect. In its order denying Farrar's motion to suppress, this court specifically found that Farrar's false testimony was not the result of an innocent mistake.  *Farrar I*, 2017 WL 741560 at *2 ("This court does not attribute these differences to . . . innocent confusion.").

Singh would have had no basis for asking this court to reconsider that finding.  The record plainly shows that Farrar wilfully lied.  As Farrar asserts, the Supreme Court has held that a witness obstructs justice if the witness gives "false

_____

[3] Farrar argues that Singh had a duty to object based on dicta in *Martinez v. Ryan*, which stated that "[e]ffective trial counsel preserves claims to be considered on appeal."  566 U.S. 1, 12 (2012).  Nothing in *Martinez* suggests that attorneys have a duty to make meritless objections.

17

testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).[4]  This court recognizes that memories may become unreliable over time, and that witnesses may struggle to recall certain details.  But here, Farrar testified that he signed three blank sheets of paper when the documentary evidence overwhelmingly established that he signed documents with text already on them.  *Farrar I*, 2017 WL 741560 at *4-5.  That is not the kind of detail that a witness innocently forgets as time passes.  Nor does Farrar argue that it was.

Instead, Farrar argues that he was impaired during his interview with law enforcement agents because he "took high dosages of Norco, Tramadol, and Xanax before he was taken into custody."  ECF No. 247, PageID # 2826-27.  He seems to be contending that his impairment caused him to legitimately believe that he signed three blank pages, even if the documents he actually signed had text on them.  That argument is also precluded by this court's findings.  In denying Farrar's motion

_____

   [4] Farrar also appears to contend that because Singh did not specifically cite *Dunnigan* in the affidavit submitted in support of the Government's opposition, he must not have known about the case.  ECF No. 259, PageID # 3125.  That assumption is unwarranted.  Singh's declaration is simply silent on that issue, and Farrar, who has the burden of proof, cannot rely on that silence to affirmatively establish that Singh did not know what the law said.

to suppress, this court expressly found that Farrar had not shown that he was impaired by medication he had taken before his interview with law enforcement agents.[5]  *Farrar I*, 2017 WL 741560 at *5 ("The possibility that he was not thinking clearly, however, is undercut by what he testified were his repeated invocations of his Fifth Amendment right against self-incrimination.").  Farrar did not challenge that finding on appeal.  In light of the findings that this court had already made, any assertion that Farrar did not wilfully obstruct justice because of impairment would have been doomed to failure.  Singh wisely chose to forego objecting to the obstruction of justice enhancement to preserve his credibility for other arguments.[6]

For the same reasons, Farrar cannot establish prejudice.  According to Farrar, he suffered prejudice because "the district court specifically said that if it were not for the

---

[5]  At the hearing on this § 2255 motion, Farrar's attorney maintained that Farrar's memory must have been impaired because his lies were so obviously contradicted by the documentary evidence.  According to his attorney, if Farrar had intentionally lied, he would have come up with a more plausible story that accounted for the documentary evidence.  But Farrar may have simply not recognized the contradiction.  He also may have been unable to think of a more persuasive lie.

[6]  Farrar stated that he told Singh that it was "critical to his interest" that Singh argue at the sentencing hearing that Farrar had not obstructed justice.  ECF No. 261-1, PageID # 3145.  That assertion is beside the point.  Irrespective of Farrar's concerns, because there was no basis for objecting, Singh did not err by preserving his credibility for other arguments.  *Lowry*, 21 F.3d at 346.

obstruction of justice it might have been inclined to go along with the recommendation of 240 months."  ECF No. 259, PageID # 3127.  That argument assumes that an objection would have caused this court to conclude that Farrar had *not* obstructed justice. That assumption is incorrect for the reasons already discussed. Even if Singh had objected, this court, based on the findings that it made in its order denying Farrar's motion to suppress, would have concluded that Farrar had obstructed justice. Farrar's sentence would have been the same.

In sum, irrespective of how Farrar's argument is construed, he does not meet his burden of demonstrating ineffective assistance under *Strickland*.  His § 2255 petition is denied.

### C.   An Evidentiary Hearing is Unnecessary.

After earlier saying that no evidentiary hearing was being requested, Farrar has requested an evidentiary hearing. That request is denied.  Because the record conclusively shows that Farrar is not entitled to relief, no evidentiary hearing is necessary.  28 U.S.C. § 2255; *see also United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003).

During oral argument on this matter, Farrar contended that an evidentiary hearing is necessary if this court rejects the assertion in Farrar's declaration that it was not his "intention to try to mislead the court" at the suppression

hearing.  ECF No. 261-1, PageID # 3145.  Farrar appears to be
saying that, without an evidentiary hearing, this court cannot
reject Farrar's statement.  That argument lacks merit.

        To reiterate, in its order denying Farrar's motion to
suppress, this court found that Farrar *did* intend to mislead the
court.  *Farrar I*, 2017 WL 741560 at *2.  Thus, Farrar's argument
is essentially a request that this court reconsider its finding
that he lied during the evidentiary suppression hearing.  There
is no basis for reconsideration.  Farrar has not identified any
new evidence that this court was previously unaware of.  Nor do
his statements demonstrate a manifest error of law or fact, or a
manifest injustice.  *See generally United States v. Arciero*, 2020
WL 4678405, at *1-2 (D. Haw. Aug. 12, 2020) (discussing the
standards for a motion for reconsideration).  This court held an
evidentiary hearing on the suppression motion, heard Farrar's
testimony, and rejected it.  A second hearing is unnecessary.
Farrar has not identified an issue of fact that must be resolved
through an evidentiary hearing on his § 2255 motion.

**V.        THE COURT DECLINES TO ISSUE A CERTIFICATE OF
            APPEALABILITY.**

        The court declines to grant Farrar a certificate of
appealability.  An appeal may not be taken to the court of
appeals from a final order in a § 2255 proceeding "[u]nless a
circuit justice or judge issues a certificate of appealability."
28 U.S.C. § 2253(c)(1)(B).  The court shall issue a certificate

of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court denies a § 2255 petition on the merits, a petitioner, to satisfy the requirements of § 2253(c)(2), "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Farrar is seeking to revisit not just this court's suppression ruling, but also the Ninth Circuit's affirmance of the underlying criminal judgment.  Reasonable jurists would not find this court's assessment of the merits of Farrar's constitutional claims debatable or wrong.

## VI.       CONCLUSION.

The court denies Farrar's § 2255 motion and declines to issue a certificate of appealability.

The Clerk of Court is directed to enter judgment in favor of the Government and against Farrar in Civil No. 21-00399 SOM and to close that case.

22

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 28, 2021.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Farrar*, Crim. No. 14-00707 SOM (01); Civ. No. 21-00399 SOM;
ORDER DENYING DEFENDANT DOUGLAS FARRAR, SR.'S MOTION UNDER 28 U.S.C. § 2255, DENYING
DEFENDANT'S MOTION FOR AN EVIDENTIARY HEARING AND DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY